UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BETH ANN E., ) | |
| ) | |
| Plaintiff, ) | No. 19 cv 7048 |
| ) | |
| v. ) | Magistrate Judge Susan E. Cox |
| ) | |
| ANDREW M. SAUL, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Beth Ann E.[1] ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability insurance benefits under Title II of the Social Security Act. The parties have filed cross motions for summary judgment.[2] For the reasons detailed below, the Court grants Plaintiff's motion for summary judgment [dkt. 10], denies the Commissioner's motion for summary judgment [dkt. 16], and remands this matter for further proceedings consistent with this Memorandum Opinion and Order.

I. Background

  a. Procedural History

In July 2012, Plaintiff filed for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 216(i), 223(d), alleging an onset date of disability of February 15, 2013. [Administrative Record ("R.") 61.] Plaintiff's claim was initially denied August 23, 2012 and denied again on reconsideration on February 21, 2013. *Id.* Plaintiff requested an administrative hearing. *Id.*

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2] Defendant has filed a Response to Plaintiff's Motion for Summary Judgment [dkt. 16] that seeks summary judgment in its *ad damnum* paragraph, which the Court therefore construes as a motion for summary judgment.

1

On March 11, 2014 Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ") Edward P. Studzinski. *Id.* A vocational expert also testified. *Id.* On October 8, 2014 the ALJ issued an opinion finding Plaintiff not disabled. [R. 61-69.] Plaintiff did not appeal.

Three years later, in February 2017, Plaintiff applied for benefits again, alleging an onset date of disability of October 9, 2014. [R. 180, 183.] Plaintiff's claim was initially denied June 16, 2017 and denied again on reconsideration on August 29, 2017. [R. 100-102, 107-109.] Plaintiff requested an administrative hearing. [R. 110-111.] On June 29, 2018 Plaintiff appeared with counsel and testified at a hearing before ALJ Diane S. Davis. [R. 30-57.] A vocational expert also testified. *Id.* On October 31, 2018 the ALJ issued an opinion finding Plaintiff not disabled. [R. 13-20.] The Appeals Council denied Plaintiff's request for review on August 26, 2019, making the decision the final decision of the Commissioner. [R. 1-5.] Plaintiff timely filed suit pursuant to 42 U.S.C. §405(g).

   b.  **Relevant Medical Background**

Plaintiff was born in April of 1964 and was 50 years old on her alleged disability onset date. [R. 33.] Plaintiff earned her bachelor of science in nursing and worked as a RN Care Manager at Christ Hospital. *Id.* Plaintiff stopped working in February 2012 after her third back surgery. [R. 34-35.] After the third surgery, Plaintiff participated in a course of physical therapy that eventually plateaued. *Id.* Plaintiff complained of intense pain, and a follow-up MRI showed a slipped disc. *Id.* As a result, Plaintiff underwent a fourth surgery on July 27, 2012 where a cage was used to stabilize the fusion. [R. 35, 298.] A follow-up MRI in November 2012 showed a mild grade 1 anterior spondylolisthesis L4-L5. [R. 452.] The MRI also showed improvement — the focal central disc protrusion at L3-L4 was no longer identified. *Id.* However, CT scans that day showed lucency suspected surrounding the L4-L5 fusion screws which may reflect loosening. [R. 454.]

Plaintiff also complained of left knee pain. [R. 456.] An MRI taken on December 5, 2012 showed a medial meniscal tear. [R. 449.] In January of 2013 Plaintiff participated in physical therapy as she

2

tried to wean herself off of narcotic medications. [R. 456.] Plaintiff reported that her lower back pain was 7 out of 10 and her left knee pain was 8 out of 10. *Id.* Plaintiff's physical therapist Georgenne Czajkoski, P.T., noted that Plaintiff's range of motion in her left knee was -4 to 132 degrees active, zero to 135 degrees passive. *Id.* Plaintiff reported that her pain was a 4 -7 out of 10 when sitting for longer than thirty minutes. [R. 457.] Plaintiff was able to climb stairs, though only one step at a time. *Id.* Plaintiff's ability to bend and retrieve laundry out of the dryer was 50% better; and her ability to retrieve objects out of the refrigerator was 30 to 40% better. *Id.* Plaintiff was able to perform only light housework, such as dusting, though she reported difficulty reaching overhead. *Id.*

In October 2013, Plaintiff continued follow-up appointments with her back-surgeon Keith L. Schaible, M.D. [R. 319.] On October 15, 2013 Dr. Schaible reviewed Plaintiff's MRI, which showed expected postoperative changes, with the disc above and below the fusion looking fine. *Id.* Plaintiff complained of continued pain restricting her activities and work. *Id.* Dr. Schaible recommended Plaintiff continue her home exercise program. *Id.* Plaintiff continued appointments with Dr. Schaible every 4 – 6 weeks. [R. 305-319.] In April 2014, Plaintiff estimated that she was 70 to 85% incapacitated or disabled due to her symptoms. [R. 315.] By July 2014 Dr. Schaible noted that Plaintiff was experiencing pain every day; showed no real changes in her condition or symptoms; and she "remain[ed] unable to return to work, likely never to return back to work with this persistent pain." [R. 313.] By September 2014 Dr. Schaible noted Plaintiff appeared stable and adjusted her pain medication down to one Norco per day. [R. 312.] In April 2015 Plaintiff complained to Dr. Schaible that her back pain worsened when driving certain distances. [R. 308.]

In July 2015 Plaintiff began treatment with a pain specialist Ebby P. Jido, M.D. [R. 327.] Dr. Jido noted Plaintiff's history of lower back pain and right-sided radiculopathy. *Id.* Plaintiff received steroid and facet injections, though they did not benefit her. *Id.* Plaintiff could not take Flexeril, Gabapentin, Baclofen, or nonsteroidal anti-inflammatory drugs due to side effects. *Id.* Plaintiff

3

renewed complaints of left knee pain from the meniscal tear. *Id.* Plaintiff also wore a knee brace. [R. 328.] Dr. Jido opined that Plaintiff suffered from lumbar post-fusion syndrome. *Id.* According to Dr. Jido, Plaintiff was not a suitable candidate for any injections. *Id.* Dr. Jido suggested a spinal cord stimulator or intrathecal pump as possible alternatives for pain management. *Id.* Finally, Dr. Jido prescribed MS Contin 50 mg. and MSIR 15 mg. *Id.* In August 2015 Dr. Jido prescribed Hysingla 30 mg., an extended-release hydrocodone because Plaintiff could not tolerate morphine. [R. 329.] By December 2015 Plaintiff was diagnosed with chronic pain, lumbar radiculopathy, lumbar stenosis, degenerative disc disease, and degenerative joint disease. [R. 336.] At this time Dr. Jido increased Plaintiff's Hysingla to 80 mg. [R. 337.] Plaintiff was not working at this time due to pain. [R. 338.]

On April 13, 2017 Plaintiff underwent examination by consultative examiner Mahrendragouda Patil, M.D. [R. 383-387.] Plaintiff complained of constant moderate pain in her neck, midback, and low back, rated at 7 out of 10. [R. 383.] Plaintiff reported that she had left knee pain since 2012; and that her knee pain was progressively worsening. *Id.* Plaintiff had not opted for left knee surgery due to complications with anesthesia. *Id.* Plaintiff complained of moderate pain and difficulty sitting for more than fifteen minutes, prolonged standing and walking. *Id.* Plaintiff denied gait imbalance. *Id.* Plaintiff had some limited lumbar range of motion in flexion, extension, left and right lateral bending. [R. 385.] Plaintiff's knee flexion was 140 degrees of a possible 150 degrees on the right, and the left knee was limited to 130 degrees. *Id.* Dr. Patil noted Plaintiff had some difficulty walking on heels and walking on toes. *Id.*

That same day, Dr. Patil ordered x-rays of Plaintiff's neck, back, and knee. [R. 388.] The neck x-rays showed an anterior spinal fixator spanning C5-7. *Id.* Anterior osteophytes were noted at C3 and C4, with a loss of cervical lordosis. *Id.* Plaintiff's thoracic x-ray was normal. [R. 389.] The lumbar x-ray noted straightening of the spine, likely due to muscular spasm; as well as marginal anterior osteophytes at L2 and L3; and anterior spinal fixator spanning L4 and L5. [R. 390.] Finally, the left knee x-ray

4

showed periarticular and posterior patellar osteophytes and medial tibio-femoral joint space was reduced. [R. 391.] By May 2017, Plaintiff renewed complaints of moderate pain with functional impairment. [R. 401.] Plaintiff described about 40% pain relief from her pain medications. *Id.* Plaintiff also noted that she was driving more to visit her father who was in rehab for bilateral wound care. *Id.*

In May 2017, Plaintiff underwent examination by consultative examiner Vidya Madala, M.D., who noted severe impairments of degenerative back disorder and osteoarthritis. [R. 79.] Dr. Madala reviewed Dr. Patil's report and the x-rays taken in April 2017. [R. 79, 81.] Dr. Madala determined that Plaintiff could occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; stand or walk a total of 6 hours in an 8-hour workday; and sit for a total of 6 hours in an 8-hour workday. [R. 80-81.] In August 2017 Plaintiff was also examined by consultative examiner Ranga Reddy, M.D., at the reconsideration level. [R. 85-95.] Dr. Reddy also reviewed Dr. Patil's report, as well as records from Advocate Christ Medical Center from 2014 - 2017 and records from the Pain Clinic from April and May 2017. [R. 90.] Dr. Reddy found the same exertional limitations for lifting, carrying, sitting, standing, and walking.[3] [R. 92.] Both Dr. Madala and Dr. Reddy noted that Plaintiff was only able to walk one block, though both found this limitation to be inconsistent with other findings. [R. 80, 91.] Neither Dr. Madala nor Dr. Reddy mentioned the notes from Dr. Schaible. [R. 75-83, 85-95.]

As of July 2017, Plaintiff transitioned her pain management to Neil Malhotra, M.D., due to insurance issues. [R. 563-566.] Dr. Malhotra noted that Plaintiff suffered from lower back pain radiating right more than the left, posteriorly to the knee and ankle at times. [R. 563.] Plaintiff's pains were associated with numbness and tingling of her lower extremities. *Id.* Plaintiff reported her pain at 7 out of 10. *Id.* During the examination, Plaintiff's gait and posture were normal. [R. 564.] The FABER exam was positive on the right; and Plaintiff had decreased lumbar range of motion in flexion and

---

[3] Dr. Madala offered a more-restrictive limitation to occasional balancing; and Dr. Reddy included a restriction of no climbing ladders, ropes, or scaffolds. [R. 16-17, 81, 92.]

5

extension. *Id.* Dr. Malhotra diagnosed Plaintiff with spondylosis, radiculopathy in the lumbar region, cervicalgia, and post laminectomy pain syndrome. *Id.* Dr. Malhotra continued Plaintiff on Hysingla 80 mg., Duexis 800 mg., and Lyrica 25 mg., but discussed the risks of chronic opiate therapy. [R. 565.]

### c. The ALJ's Decision

On October 31, 2018, the ALJ[4] issued a written decision denying Plaintiff disability benefits. [R. 13-20.] Plaintiff alleged disability beginning on October 9, 2014. [R. 13.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of October 9, 2014 through her date last insured of December 31, 2017. [R. 15.] At Step Two, the ALJ found that Plaintiff had severe impairments of: degenerative disc disease of the lumbar spine and cervical spine, and osteoarthritis of the left knee. *Id.* The ALJ also detailed Plaintiff's nonsevere impairment of mild obesity. *Id.* The ALJ found that Plaintiff's mild obesity did not cause significant work-related functional limitations, nor did her obesity exacerbate other medically determinable impairments. *Id.* At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 16.]

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[5] to perform light work, with the following additional limitations: no climbing ladders, ropes, or scaffolds; only occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; only occasionally lifting or carrying 20 pounds and frequently lifting or carrying 10 pounds; and only standing, walking or sitting for about six hours in an eight-hour workday. [R. 16.] At Step Four, the ALJ determined that Plaintiff was not capable of performing any of her past relevant work: Nurse, General Duty (075.364-010; SVP 7; medium, performed as very heavy), a composite job

---

[4] Any reference hereinafter to the ALJ shall refer to Judge Diane S. Davis and her ruling from October 31, 2018.

[5] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

6

involving Nurse Consultant (0075.127-014; SVP 7; medium) and Utilization Review Coordinator (079,262-010; SVP 7; medium). [R. 19.]

At Step Five, based on the VE's testimony the ALJ made alternative findings of other occupations Plaintiff was capable of performing in light of her age, education, work experience, and RFC. [R. 19-20.] Specifically, the ALJ determined that Plaintiff could also perform the jobs of marker, retail (209.587-034; SVP 2; light), cashier II (211.462-010; SVP 2; light), and mail clerk (209.687-026; SVP 2; light), which the ALJ found existed in significant numbers in the national economy. [R. 20.] The ALJ determined the VE's testimony was consistent with the Dictionary of Occupational Titles. *Id.* Because of these determinations, the ALJ found Plaintiff not disabled under the Act. *Id.*

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995,

1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

### III. Discussion

Among other things, Plaintiff asserts that the ALJ erroneously rejected the opinions of Plaintiff's treating physician, Dr. Schaible. The Court agrees.

In making a disability determination, Social Security regulations direct an ALJ to evaluate each medical opinion in the record. 20 C.F.R. § 416.927(c). The SSA will articulate "how persuasive we find all of the medical opinions and all of the prior administrative medical findings" in a claimant's case record. 20 C.F.R. § 404.1520c. An ALJ must provide "good reasons" for how much weight he gives to a treating source's medical opinion. *See Collins v. Astrue*, 324 Fed. Appx. 516, 520 (7th Cir. 2009); 20

8

C.F.R. § 416.927(c)(2) ("We will always give good reasons in our…decisions for the weight we give your treating source's opinion."). When an ALJ decides for "good reasons" not to give controlling weight to a treating physician's opinion, he must determine what weight to give to it and other available medical opinions in accordance with a series of factors, including the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; the supportability of the opinion; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); see 20 C.F.R. § 416.927(c)(2)-(6). An ALJ must provide "sound explanation" for the weight he gives each opinion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If he does not discuss each factor explicitly, the ALJ should demonstrate that he is aware of and has considered the relevant factors. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

Here, the Court does not believe the ALJ articulated "good reasons" for not giving controlling weight to Dr. Schaible's opinions. Even if there were sound reasons for refusing to give Dr. Schaible's opinions controlling weight, the ALJ still erred by assigning his opinions little weight without considering relevant regulatory factors under 20 C.F.R. § 404.1527(c) (*i.e.*, length, nature, and extent of treatment relationship; opinion's consistency with other evidence; explanatory support for the opinion; and any specialty of the treating physician). *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018); *Scardamaglia v. Colvin*, 2015 WL 9582427, at *4 (N.D. Ill. Dec. 30, 2015) (an ALJ is required to point to specific reasons for rejecting the opinion of a treating physician) (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

The ALJ did not address the necessary regulatory factors under 20 C.F.R. § 404.1527(c) when assigning no weight to Dr. Schaible's opinions. Dr. Schaible opined that Plaintiff "remain[ed] unable to work, likely to never return to work with this persistent pain." [R. 313.] Specifically, Dr. Schaible noted that Plaintiff complained of pain that restricted her activities and work, pain with ADLs, inability

9

to stand for more than one hour, and pain worsening with driving. [R. 313-319.] The ALJ afforded no weight to this treating opinion because Dr. Schaible offered improper legal conclusions, did not identify any work-related functional limitations, and was overall inconsistent with the record as a whole. [R. 17.] Ultimately, the ALJ determined that the record reflects "relatively benign physical examination findings" and Plaintiff's medication allows her to stay active and functional. [R. 18.] However, these reasons fail to constitute substantial evidence, as discussed below.

First, the ALJ wrongly discounted Dr. Schaible's opinion as an improper legal conclusion by a medical professional. [R. 17.] As the ALJ correctly pointed out, the decision to award benefits is a matter reserved to the Commissioner. *Garcia v. Colvin,* 741 F.3d 758, 760 (7th Cir. 2013) (whether a claimant qualifies for benefits is a question of law). However, "a medical opinion that a claimant is unable to work is not an improper legal conclusion." *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (citing *Bjornson v. Astrue,* 671 F.3d 640, 647–48 (7th Cir. 2012)). In fact, ALJs "must consider medical opinions about a patient's ability to work full time because they are relevant to the RFC determination." *Lambert,* 896 F.3d at 776 (citing benefits *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013)). Here, Dr. Schaible's most recent opinions state Plaintiff's chronic back pain is "persistent, chronic, [and] intractable" – preventing Plaintiff from returning to work despite her pain management care. [R. 305-306.] These are not improper legal conclusions.

Furthermore, Dr. Schaible's statements about Plaintiff's impairments are medical opinions. A medical opinion "is a statement that reflects a judgment about the nature and severity of the impairment, including symptoms, diagnosis, prognosis, what the claimant can still do despite the impairment, and any physical or mental restrictions." *Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(a)(1)). Dr. Schaible described Plaintiff's nature and severity as "persistent, chronic, intractable back pain." [R. 308.] In terms of physical restrictions, Dr. Schaible stated that Plaintiff had pain with activities of daily living and helping her children. [R. 316.] Dr.

Schaible also noted that Plaintiff had difficulty standing for more than an hour. [R. 315.] By June of 2014 Plaintiff complained of difficultly standing for 20 to 30 minutes. [R. 314.] In April of 2015 Dr. Schaible made note that Plaintiff's pain worsened with activities such as driving [R. 308.] Dr. Schaible stated that Plaintiff was unable to return to work due to her pain. [R. 306, 313.] Dr. Schaible's office notes do not contain formal diagnoses, however, the statements detail Plaintiff's symptoms, the nature and severity of her impairments, and her physical restrictions.

Even still, the ALJ was ultimately required to assess the weight given to Dr. Schaible's opinion in accordance with the regulatory checklist of factors. *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010). The ALJ failed to consider the length, nature, and extent of Dr. Schaible's treatment relationship with Plaintiff; the consistency of Dr. Schaible's opinions with other evidence of record; and any medical specialty of Dr. Schaible. *Gerstner*, 879 F.3d at 263. Here, the ALJ failed to even acknowledge Dr. Schaible's status as treating physician. [R. 17.] Compounding this error, the ALJ failed to consider that Dr. Schaible consistently treated and examined Plaintiff approximately every six weeks over the course of four years. *See* 20 C.F.R. § 404.1527(c)(1)-(c)(2). Furthermore, the ALJ did not properly consider the supportability of Dr. Schaible's opinion. 20 C.F.R. § 404.1527(c)(3). As the ALJ noted, Dr. Schaible refused to fill out a pain management check-box form in August 2017. [R. 17, 489.] Yet as Dr. Schaible explained, Plaintiff had been released from Dr. Schaible's care and at that time and was being treated by the pain management clinic. [R. 495.] Nonetheless, Dr. Schaible performed two of Plaintiff's surgeries and treated Plaintiff's symptoms over the course of approximately four years – coordinating with other specialists, including Dr. Jido and Dr. Malhotra. [R. 305-319, 489.] Not to mention Dr. Schaible also specializes in neurosurgery. 20 C.F.R. § 404.1527(c)(5). [R. 495.] The failure of the ALJ to assess the regulatory factors requires remand. *Gerstner,* 879 F.3d at 263; *see also Scrogham v. Colvin,* 765 F.3d 685, 697-698 (7th Cir. 2014) ("The ALJ here should have addressed these factors in her opinion to enable us to review whether she engaged

11

in the correct methodology"). Because these factors were unaddressed, the Court cannot trace the ALJ's reasoning behind the decision to discount Dr. Schaible's opinions and, thus, remand is required for this reason as well.

Lastly, the ALJ also erred by failing to consider any of the other treating physicians' opinions. Absent from the ALJ's opinion is any discussion of the opinions of Dr. Jido and Dr. Malhotra from the pain clinic. [R. 13-20.] An ALJ must consider all medical opinions in the record. *Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)). Plaintiff began treatment with pain specialist Dr. Jido in July 2015. [R. 327.] Dr. Jido opined that Plaintiff suffered from lumbar post-fusion syndrome. *Id.* According to Dr. Jido, Plaintiff was not a suitable candidate for any injections. *Id.* Dr. Jido suggested a spinal cord stimulator or intrathecal pump as possible alternatives for pain management. *Id.* Finally, Dr. Jido prescribed MS Contin 50 mg and MSIR 15 mg. [R. 328.] By December 2015 Plaintiff was diagnosed with chronic pain, lumbar radiculopathy, lumbar stenosis, degenerative disc disease, and degenerative joint disease. [R. 336.] In July 2017 Plaintiff transitioned her pain management to Dr. Malhotra. [R. 563-566.] Dr. Malhotra noted that Plaintiff suffered from lower back pain radiating right more than the left, posteriorly to the knee and ankle at times. *Id.* During the examination, a FABER exam was positive on the right and Plaintiff had decreased lumbar range of motion in flexion and extension. [R. 564.] Dr. Malhotra diagnosed Plaintiff with spondylosis, radiculopathy in the lumbar region, cervicalgia, and post laminectomy pain syndrome. *Id.* Dr. Malhotra continued Plaintiff on Hysingla 80 mg., Duexis 800 mg., and Lyrica 25 mg. [R. 565.] Although the ALJ was not required to address in writing every piece of evidence or testimony presented, she was required to provide "an accurate and logical bridge" between the evidence and her conclusions. *Roddy,* 705 F.3d at 636 (citing *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir.2008); *McKinzey v. Astrue,* 641 F.3d 884, 891 (7th Cir.2011)). Without any mention of Dr.

Jido or Dr. Malhotra, the Court is left wondering why the ALJ may have chosen to discount their opinions.

## IV. Conclusion

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 10] is granted; the Commissioner's motion for summary judgment [dkt. 16] is denied.

Entered: 8/24/2020

Susan E. Cox,
United States Magistrate Judge